

FILED

Aug 07 2026, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Amanda M. Wilson,

*Appellant-Respondent*

v.

Matthew V. Mann,

*Appellee-Petitioner*

---

August 7, 2026

Court of Appeals Case No.
26A-DR-248

Appeal from the Hamilton Circuit Court

The Honorable Andrew R. Bloch, Judge

Trial Court Cause No.
29C01-1401-DR-795

---

**Opinion by Judge Scheele**
Judges May and Pyle concur.

**Scheele, Judge.**

## Case Summary

Amanda M. Wilson (Mother) and Matthew V. Mann (Father) (collectively, Parents) divorced in 2014. Pursuant to a later court order, Parents received joint legal custody of their daughter and Mother was awarded primary physical custody with Father exercising parenting time. For approximately ten years, Parents abided by this order, except with regard to child support, which they informally modified themselves by agreement in 2018.

In 2024, Mother moved to modify Father's parenting time. Following a hearing, the trial court denied her motion, recalculated child support, and ordered her to pay Father $20,726.00 in arrearage. Mother now appeals, raising the following issues for our review: whether the trial court erred in calculating child support and in determining she owed arrearage, and whether the trial court erred in denying her motion to modify parenting time. We affirm in part and reverse and remand in part.

## Facts and Procedural History

Parents are the biological parents of M.M. (Child), born in 2011. Parents married in March 2013. In January 2014, Father filed a petition for dissolution, which was granted in September. As part of the dissolution, the parties agreed to joint legal and physical custody of Child, then three years old.

[4] In 2016, both parties petitioned the court to modify parenting time and/or custody as well as child support. Following a hearing, the court entered an order of modification (the 2016 Order). The 2016 Order provided the parties would continue to share joint legal custody and Mother would have primary physical custody subject to Father's parenting time. Father's parenting time was ordered to be every other weekend from Thursday to Monday, as well as one mid-week overnight per week. The 2016 Order also provided the parties were to share "pro rata in all agreed upon extracurricular expenses[.]" App. Vol. II p. 59 (formatting altered).

[5] As to child support, the 2016 Order provided Mother was to pay Father weekly support "[p]ursuant to the attached child support worksheet[.]" *Id.* at 58. According to the child support worksheet, Father was to maintain Child's health insurance, for which he received a $56 weekly credit for the cost of the premiums. This credit plus Mother's higher income resulted in a negative support order, in which Mother as the custodial parent was ordered to pay Father $43 a week in child support.

[6] In late 2017, Father discovered his health care premium costs would be increasing. Because of this, and with the help of their parenting coordinator, Parents agreed that Mother, rather than Father, would be responsible for Child's health insurance. In exchange, Mother would no longer pay Father the $43 weekly child support. Parents began implementing this informal agreement as of January 1, 2018.

[7] For the next six years, Parents abided by the 2016 Order except for their own agreement regarding child support. Child did well in school, participated in extracurriculars and faith-based activities, and had a positive relationship with Parents. Parents maintained a "cordial co-parenting relationship" and were generally able to "successfully communicate[] regarding [Child's] schedule and their parenting time[.]" *Id.* at 25-26.

[8] In September 2024, Father remarried and soon after moved into a new home with his wife and her two sons. Around this time, thirteen-year-old Child was diagnosed with anxiety. In October, Mother filed a motion to modify custody, parenting time, and child support, alleging Father's new relationship was negatively affecting Child. A provisional hearing was held in November 2024, after which the court appointed a guardian ad litem (GAL).

[9] A final hearing was held over two days in September and November 2025. Prior to the hearing, Mother clarified she was no longer seeking a change of custody but rather seeking a modification of Father's parenting time to reflect the Indiana Parenting Time Guidelines for Adolescents and Teenagers as well as a modification of child support.

[10] At the hearing, both parents presented evidence as to parenting time and child support, as well as evidence regarding alleged child support arrearage the other party owed. Specifically, Mother presented evidence Father owed child support for the cost of Child's extracurriculars, while Father testified that Mother had not been paying child support in line with the 2016 Order. On the first day of

the final hearing in September, the GAL testified and recommended Father's parenting time remain the same. But on the second day of the final hearing two months later, the GAL testified her recommendation had changed, and she now recommended that parenting time occur on alternating weekends from Friday to Sunday, in line with Mother's request and with the Indiana Parenting Time Guidelines for Adolescents and Teenagers. *See* Ind. Parenting Time Guidelines § II(E).

[11] Following the hearing, the trial court issued an order denying Mother's motion to modify parenting time. The court further ordered Mother to pay Father $22 a week in child support and found she failed to comply with the 2016 Order regarding child support and therefore owed Father $20,726.00 in arrearage. Mother now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[12] Mother challenges the trial court's order, contending it erred in calculating child support and arrearage as well as erred in denying her motion to modify parenting time. Where, as here, the trial court issued findings of fact and conclusions of law, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed de novo. *Id.* We set aside a trial court's

judgment only if it is clearly erroneous. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.*

## I. Child Support

[13]  Mother argues the trial court erred in calculating her child support obligation and in its determination regarding child support arrearage. "On review, '[a] trial court's calculation of child support is presumptively valid.'" *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015) (quoting *Young v. Young,* 891 N.E.2d 1045, 1047 (Ind. 2008)). "Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines." *Salser v. Salser*, 75 N.E.3d 553, 558 (Ind. Ct. App. 2017). The Guidelines apportion the cost of supporting a child between the parents according to their means, on the premise that the child should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Id.* at 558-59. A trial court's calculation of a child support obligation will be reversed only if it is clearly erroneous or contrary to law. *Id.* at 559.

[14]  Mother brings three challenges relating to the trial court's order on child support. First, she argues the trial court improperly calculated her child support amount. Second, she argues the court erred in determining she had not complied with the 2016 Order and ordering her to pay $20,726.00 in arrearage. Finally, she argues the trial court failed to rule on her own request for Father to pay her arrearage. We address each contention in turn.

## A. Calculations

Mother first argues the trial court erred in determining her weekly income and therefore in its child support calculations. "When fashioning a child support order, the trial court's first task is to determine the weekly gross income of each parent." *In re Paternity of G.R.G.*, 829 N.E.2d 114, 118 (Ind. Ct. App. 2005). Weekly gross income includes "income from any source" such as bonuses. *Id.* (quoting Ind. Child Support Guideline 3(A)). Calculating weekly gross income is "fact-sensitive when irregular income, such as bonuses . . . is involved." *Id.*

Here, each party entered a proposed child support obligation worksheet. Mother's worksheet, which was entered as Exhibit E on the first day of the hearing in September 2025, indicated Father's weekly gross income was $4,053.56 and her own was $5,639.62. *See* Ex. Vol. IV p. 100. Father's worksheet was entered as Exhibit 3A on the second day of the hearing in November 2025. That worksheet indicated Father's weekly gross income to be $3,842.06 and Mother's to be $5,639.62. *See id.* at 35. In its order, the trial court assigned Father's weekly income as $3,842.06 and Mother's as $5,639.62, in line with Father's computations in Exhibit 3A, resulting in Mother owing $22 weekly in child support. Mother argues these figures were determined using inconsistent methodologies, resulting in an inequitable child support calculation. We agree.

Although Mother herself attested her weekly income was $5,639.62, that calculation was done as of the first day of the hearing in September. Mother testified that figure was reached by taking her year-to-date income, including

her bonus received in early 2025, and dividing it by the number of weeks in the year so far. She similarly applied that methodology to Father's 2025 year-to-date income, including his own bonus received in early 2025, and calculated his weekly income to be $4,053.56.

[18] When Father testified, he asserted his weekly income was $3,842.06. He applied the same methodology Mother used—he took his year-to-date income plus his bonus and divided it by the number of weeks in the year so far. Importantly though, Father's testimony occurred on the second day of the hearing in November, two months after the first day when Mother testified. As such, Father's year-to-date income, including his bonus, was divided over a larger number of weeks, resulting in a lower gross weekly income amount. He notably did not apply this beneficial adjustment to Mother's weekly income, simply assigning her the same $5,639.62 that she had computed two months earlier.

[19] On appeal, Father does not dispute the figures above or that there was an inconsistency in the calculations but instead argues any error did not "materially affect[] the outcome." Appellee's Br. p. 25. However, we do not have all the information on appeal—specifically Mother's year-to-date income as of the November hearing date—to recalculate the correct support and determine whether the difference is de minimis. And given we are remanding this case due to other matters, we find the error here significant enough to warrant appellate relief even if the ultimate outcome is a minor change in support. *See Glover v. Torrence*, 723 N.E.2d 924, 937 (Ind. Ct. App. 2000) ("We

hold that, under the present circumstances where remand is required for another matter, the $5.00 per week deviation is significant enough to warrant appellate relief."). We thus reverse the child support order and remand with instructions for the court to recalculate child support.

### B. Mother's Arrearage

[20] Mother also argues the court erred in finding she had failed to comply with the 2016 Order to pay child support and ordering her to pay $20,726.00 in arrearage. As part of the 2016 Order, Father was to maintain health insurance for Child. Because of this, Father received a $56 credit toward his child support obligation, resulting in a negative child support order in which the custodial parent—Mother—was ordered to pay Father $43 a week in child support. The parties abided by this throughout 2016 and 2017. Thereafter, due to an increase in Father's health care premiums, he and Mother, with the assistance of their parenting coordinator, agreed that Mother would provide Child with health insurance and in exchange she would no longer pay Father child support. This continued until the current proceedings. In its order, the trial court determined Mother had not been paying child support as required in the 2016 Order and ordered her to pay arrearage. In doing so, the court rejected Mother's argument that providing health insurance coverage for Child in place of Father constituted child support, reasoning that this was an improper retroactive modification of child support.

[21] In *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007), our Supreme Court addressed the issue of retroactive child support modification and emphasized "a

parent subject to a support order must make payments in accordance with that order until the court modifies and/or sets aside the order. As a result, informal agreements between parents are generally not effective until a motion for modification is filed." The Court acknowledged this bright-line rule "may occasionally cause inequities" but found these inequities outweighed by the benefits, as the rule "protects the welfare of children, provides predictability and certainty, and prevents extended and expensive litigation about alleged informal agreements between parents." *Id.* at 661-62. Nonetheless, the Court went on to find the rule is subject to certain "narrow exceptions" including where "the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree[.]" *Id.* at 662.

[22] Following *Whited*, we applied the substantial compliance exception to the payment of educational expenses. In *Vagenas v. Vagenas*, 879 N.E.2d 1155 (Ind. Ct. App. 2008), *trans. denied*, the parents divorced and the father was ordered to pay child support. When the child entered college, the parents agreed the father would pay one-half of the child's college expenses and continue to pay child support during the times the child was with the mother on school breaks. Thereafter, the mother filed suit alleging the father had failed to pay the amount of support that was ordered. The trial court held the father substantially complied with the order, and on appeal we agreed. We first emphasized that— under both Indiana case law and the Indiana Child Support Guidelines— college expenses were in the nature of child support. Given this and given that the parties had agreed that the father's payments would be considered that

support, we found the "payment of college expenses equates to a payment of child support" and the father "substantially complied with the child support order." *Vagenas*, 879 N.E.2d at 1159-60.

[23] As in *Vagenas*, the situation here meets the substantial compliance exception. Inarguably, the cost of health insurance premiums is in the nature of child support—so much so that, under the Child Support Guidelines, a parent generally receives a health insurance credit in an amount equal to the premium cost the parent actually pays for a child's health insurance. *See Ashworth v. Ehrgott*, 934 N.E.2d 152, 162 (Ind. Ct. App. 2010) (citing Ind. Child Support Guideline 3(E)(2)). Notably, in the 2016 Order, in arriving at the child support obligation for Mother, Father received a credit for the amount he was paying in Child's health care premiums. Thereafter, Mother and Father entered into an agreement that Mother would take over providing the health insurance and doing so would be in lieu of her paying the $43 weekly child support. Given this, we find Mother substantially complied with the child support order.

[24] We acknowledge that the substantial compliance exception is "narrow" and the standard to show it applies is "rigorous." *Whited*, 859 N.E.2d at 662. Nonetheless, its application is appropriate here. To hold otherwise would result in a "windfall" to Father because for years he did not pay for Child's health care premiums—as required by court order and as calculated in his child support amount—yet he would now receive approximately ten years of back

pay for expenses he did not incur.[1] *See Thacker v. Thacker*, 710 N.E.2d 942, 945-46 (Ind. Ct. App. 1999) (reversing trial court's order of child support arrearage where the order would result in "a windfall to [the mother] for expenses she did not actually incur"). Accordingly, we reverse the trial court's order as to Mother's arrearage.[2]

## C. Father's Arrearage

[25] Mother also argues the trial court erred in failing to rule on an issue. Specifically, she contends she "requested reimbursement for additional child-rearing expenses she had paid in full for several years" and that the trial court failed to rule on that issue. Appellant's Br. p. 25. While no pre-hearing motion addressed arrearage, both parties testified and presented evidence at the hearing that the other party owed past-due child expenses. Additionally, both parties included this issue in their proposed findings of fact and conclusions of law. Specifically, Father alleged Mother owed for unpaid child support as detailed above, while Mother alleged Father owed for unpaid expenses relating to Child's extracurriculars. Yet the trial court in its order addressed only what

---

[1] We note the trial court ordered the arrearage back to 2016, despite undisputed evidence that Mother paid child support in 2016 and 2017.

[2] Father argues that in order for Mother to show substantial compliance with the 2016 Order, she should have to prove "(1) that specific payments were made; (2) the amount and timing of such payments; (3) that the payments were for the benefit of the child; and (4) that they substantially complied with the support order's purpose." Appellee's Br. p. 21. In support, he cites *Bendix v. Bendix*, 550 N.E.2d 825, 826 (Ind. Ct. App. 1990) and *Castro v. Castro*, 436 N.E.2d 366, 368 (Ind. Ct. App. 1982). We do not find support for his proposed test in either of these cases and decline to adopt such a test. Notably here, there is no dispute Mother has been providing health insurance to Child in lieu of child support, and even more importantly, no dispute that Father has not been paying for Child's health insurance in violation of the 2016 Order.

arrearage Mother owed Father, and did not address what, if any, Father owed Mother. Accordingly, we remand to the trial court with instructions to rule on this issue. *See Campbell v. Campbell*, 250 N.E.3d 459, 473 (Ind. Ct. App. 2024) (remanding for the trial court to determine an issue it failed to address in its order).

## II. Parenting Time

Mother also argues the trial court erred in denying her motion to modify Father's parenting time. As noted above, where the trial court enters findings of fact and conclusions of law, we must first determine whether the evidence supports the findings and whether the findings support the judgment. *In re Paternity of Snyder*, 26 N.E.3d 996, 997 (Ind. Ct. App. 2015). The judgment will be reversed only where clearly erroneous. *Id.*

"Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents, and thus a noncustodial parent is generally entitled to reasonable visitation rights." *Perkinson v. Perkinson*, 989 N.E.2d 758, 762 (Ind. 2013) (quotation omitted).

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code § 31-17-4-2. We review the modification of parenting time for an abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 109 (Ind. Ct. App. 2012). We grant latitude and deference to our trial judges in family law matters and consider only the evidence favorable to the judgment and the inferences flowing therefrom. *Id.* We do not reweigh the evidence or assess witness credibility. *Id.*

## A. Legal Analysis

First, Mother argues the trial court's findings and conclusions indicate that it applied the incorrect legal standard. The trial court made the following findings and conclusions regarding parenting time:

> 92. Ind. Code § 31-17-4-2 provides: "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child."

> 93. Our Supreme Court explained that "Indiana has long recognized that the right of parents to visit their children is a precious privilege" and that "a parent is 'generally entitled to reasonable visitation rights.'" *Manis v. McNabb*, 104 N.E.3d 611, 620 (Ind. Ct. App. 2018) (quoting *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013)).

> ***

> 96. Ind. Code § 31-17-4-2 does, however, provide: ". . . the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."

97. Even though the statute uses the term "might," "[o]ur appellate courts have interpreted this statute to require evidence establishing that visitation would endanger or impair the physical or mental health of the child." 104 N.E.3d at 620 (citing *Perkinson*, 989 N.E.2d at 763) (emphasis added).

98. The appropriate standard for denying parenting time to a parent was first addressed in *Stewart v. Stewart*, in which the Court of Appeals wrote:

Neither party suggests that the word "might" in the statute ("visitation by the parent *might* endanger the child's physical health or significantly impair his emotional development") requires only a *mere possibility* that the physical or mental health of the child would be endangered or impaired. In view of the nature of the parental right being cut off, such a construction would be an absurd one. Why would the legislature acknowledge the basic right of visitation of a . . . parent and then effectively abolish that right by permitting terminations supported only by speculative, possibility-type evidence. Thus, we have no hesitation in concluding that statute requires evidence establishing that visitation "would" (not "might") endanger or impair the physical or mental health of the child.

521 N.E.2d 956, 960, n.3 (Ind. Ct. App. [(1988),] *trans. denied*.

99. "A party who seeks to restrict parenting time rights bears the burden of presenting evidence justifying such a restriction." *P.S. v. W.C.*, 952 N.E.2d 810, 816 (Ind. Ct. App. 2011) (citing *Farrell v. Littell*, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003)).

100. The evidence provided herein does not support a modification of . . . parenting time.

101. Herein, Mother is the party seeking modification of . . . parenting time and has the burden to support such modification.

102. . . . The evidence also does not show that a modification of custody or a reduction of Father's parenting time is in the best interest of the Child. As such, the parties shall continue to have joint legal custody of [Child] and parenting time as established in the 2016 Order.

\*\*\*

104. As to parenting time, the Court is unpersuaded that further restricting Father's parenting time with [Child] is a necessary measure to address the alleged concerns.

App. Vol. II pp. 40-43.

Mother takes issue with Findings 96-99 and 104, contending these show the trial court was applying the standard for a restriction of parenting time under section 31-17-4-2. As noted above, "[r]estrictions on parenting time require a specific finding contemplated by the statute." *Payes v. Rivas*, 270 N.E.3d 1, 9 (Ind. Ct. App. 2025). Specifically, Indiana Code section 31-17-4-2 provides in pertinent part that the "court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." Mother argues she sought only to modify Father's parenting time to be in line with the Indiana Parenting Time Guidelines, and that such a modification is not a restriction under section 31-17-4-2. We agree.

[30]     This Court has explained that a finding that the parenting time would endanger the child's physical health or significantly impair the child's emotional development "is only required where parenting time rights are curtailed in an unreasonable manner." *Matter of Paternity of J.K.*, 184 N.E.3d 658, 667 (Ind. Ct. App. 2022).[3] Because Mother was seeking to modify Father's parenting time to reflect the Indiana Parenting Time Guidelines, any reduction in Father's parenting time would not have been so unreasonable as to amount to a "restriction" of parenting time under section 31-17-4-2. *See id.* at 665 ("[P]arenting time awards consistent with the Parenting Time Guidelines meet the reasonableness requirement[.]"); *see also Clary-Ghosh v. Ghosh*, 26 N.E.3d 986, 990 (Ind. Ct. App. 2015) (reduction in the mother's parenting time was not a "restriction" under section 31-17-4-2 where the reduction was consistent with the Indiana Parenting Time Guidelines). Thus, all Mother needed to show was that modification of the parenting time was in Child's best interests. *See Clary-Ghosh*, 26 N.E.3d at 991.

[31]     However, we do not agree with Mother that the trial court applied the incorrect legal analysis here. While the court did make several findings regarding the standard and caselaw for restricting parenting time under section 31-17-4-2, it ultimately applied only the best interests standard to Child. *See* App. Vol. II p.

---

[3] In *Paternity of J.K.*, this Court was analyzing Indiana Code section 31-14-14-1, which applies to paternity cases, but contains a similar provision requiring a finding that the parenting time would endanger the child's physical health and well-being or significantly impair the child's emotional development. *Compare* Ind. Code § 31-14-14-1 (2026), *with* Ind. Code § 31-17-4-2.

42 (Finding 102). The court made no determination as to whether parenting time with Father would endanger or impair Child's physical or mental health.

[32] Ultimately, we presume the trial court knows the law and applies it correctly. *Moriarty v. Moriarty*, 150 N.E.3d 616, 627 (Ind. Ct. App. 2020), *trans. denied*. Without any evidence to the contrary, we cannot say the trial court applied the incorrect legal analysis in determining whether to modify Father's parenting time.

## B. Findings and Conclusions

[33] Mother challenges some of the trial court's findings of fact.[4] Where, as here, the trial court enters findings of fact and conclusions of law, we must first determine whether the evidence supports the findings and whether the findings support the judgment. *In re Paternity of Snyder*, 26 N.E.3d 996, 997 (Ind. Ct. App. 2015). The judgment will be reversed only where clearly erroneous. *Id.* To determine whether the findings or conclusions are clearly erroneous, we consider only evidence favorable to the judgment. *Id.*

[34] Mother challenges the following findings:

---

[4] Mother also takes issue with the trial court's findings relating to legal custody and Father's relocation. While Mother initially challenged Father's relocation and requested a modification of legal custody in her October 2024 motion, by the time of the hearing in 2025 she testified she no longer was challenging the relocation or requesting a change in legal custody. Thus, she asks us to strike these findings as "irrelevant." Appellant's Br. p. 25. But despite Mother's testimony, her motion included an objection to Father's relocation and requested a change in legal custody. *See* App. Vol. II pp. 61-62. As such, we cannot say these findings were irrelevant.

60. During [the] final hearing, and after a videocall and a phone call with [Child], and emails from Mother reporting that [Child] was returning upset when coming from spending time with Father, the Guardian ad Litem testified that she had changed her reported recommendation to the Court on parenting time from Father continuing to have unrestricted parenting time. (the "Updated Recommendation"). *Nov. 7, 2025 Hearing at 4:42:00; 5:01:45.*

\*\*\*

62. The Guardian ad Litem's changed recommendation was emailed to counsel less than 10 days before the hearing and not timely reported to the Court or counsel. The change to the recommendation was Father's midweek parenting time occur as [Child] desires. At the hearing, however, the GAL was unsure of her changed recommendation, but ultimately testified that Father should have no mid-week parenting time, and no Sunday overnight parenting time thus eliminating three of the five nights [Child] is with Father in a fourteen day period. *Nov. 7, 2025 Hearing at 4:50:30.*

\*\*\*

67. Disagreements between the parties have arisen on occasion when there is a change to the planned schedule or one party has withheld information from the other. Mother did not discuss or share with Father that [Child] was scheduled to undergo DSM-5 testing until a week before the scheduled appointment. *Nov. 26, 2024 Hearing at 10:48:00.* Mother did not share with Father that [Child] reported her stepbrother's friend having alcohol at Father's home. *Nov. 7, 2025 Hearing at 1:41:00.* Mother failed to report to Father [Child's] plans to go on mission trips out of the country. *Nov. 7, 2025 Hearing at 2:43:00; 3:50:00.* Mother did not provide details to Father about a weekend-long camp [Child]

attended. *Nov. 7, 2025 Hearing at 3:54:15*. Mother has not responded to Father when asked for information regarding [Child's] anxiety "panic attack". *Nov. 7, 2025 Hearing at 3:05:15; 3:40:30.*

App. Vol. II pp. 34-35.

[35] As to Finding 60, Mother argues "there is no evidence in the record [that] . . . the GAL recommended restricted parenting time." Appellant's Br. p. 28. The GAL gave two parenting time recommendations: the first was that Father's parenting time remain the same, and the updated recommendation was that the midweek overnight visit and Sunday overnight visit be stopped in line with the Guidelines. To the extent this finding suggests the GAL recommended "restricted" parenting time as contemplated by statute, we agree with Mother that this is not correct.

[36] As to Finding 62, Mother argues this finding is erroneous in two ways. First, she argues the GAL did not recommend Father's midweek parenting time occur as Child desires. We agree. It is clear from the GAL's updated report and her testimony that her updated recommendation as to parenting time was that Father receive "no midweek and no Sunday overnight." Tr. Vol. III p. 15. At no point did she suggest Child should dictate that schedule. This portion of the finding is clearly erroneous. Additionally, Mother argues the finding is erroneous where it states the GAL was unsure of her changed recommendation. We agree that the transcript does not indicate the GAL was ever unsure of her

changed recommendation, and her updated recommendation and testimony are quite clear. This portion of the finding is also clearly erroneous.

[37] As to Finding 67, Mother again argues it is erroneous in two ways. First, she argues Child did not undergo DSM-5 testing—a psychological evaluation. But this contention is directly contradicted by her own testimony that Child received "a DSM-5 PHQ evaluation" in November 2024. Tr. Vol. II p. 9. Next, Mother argues she did not fail to report to Father Child's plans to attend a mission trip. However, she does not argue this portion of the finding is clearly erroneous, and it is supported by her testimony that she had not discussed the trip with Father. Mother points to testimony that she encouraged Child to talk to Father about the trip and that the trip was not yet planned and "[n]o details were known" to relay. Appellant's Br. p. 28. These are requests to reweigh evidence, which we do not do. This finding is not clearly erroneous.

[38] However, as detailed further below, even excluding the erroneous findings, the remaining findings support the trial court's determination that not modifying Father's parenting time was in Child's best interests.

## C. Best Interests

[39] Mother argues that even if the court used the correct legal analysis, it incorrectly determined it was in Child's best interests for Father's parenting time to remain unchanged. Specifically, she points to the GAL's testimony recommending Father's parenting time be changed and argues this evidence

"leads to only one logical conclusion—Mother's request to modify parenting time should have been granted." *Id.* at 31.

[40] But the trial court's conclusion that a modification of parenting time was not in Child's best interests is supported by other evidence in the record. Specifically, Child has historically had a "great relationship" with both parents, she is active and involved in church and school extracurriculars, Parents are generally successful at communicating regarding her schedule and transportation, and Child is building positive relationships with Father's new wife and stepchildren. App. Vol. II p. 25. All these findings support the court's conclusion that maintaining Father's parenting time is in Child's best interests. And although the GAL testified she recommended modifying parenting time, the trial court is not obligated to follow this recommendation. *See Clark v. Madden*, 725 N.E.2d 100, 109 (Ind. Ct. App. 2000). Ultimately, Mother's argument that the trial court should have given more weight to the GAL's testimony is a request to reweigh evidence, which we do not do.

## III. Conclusion

[41] Because Mother substantially complied with the child support order when she agreed to stop paying Father child support and instead provide Child with health insurance, we reverse the trial court's arrearage order as to Mother. We further reverse the trial court's child support order and remand for recalculations, as well as for the trial court to rule on the issue of Father's arrearage. However, the trial court did not abuse its discretion in denying

Mother's motion to modify parenting time. As such, we affirm in part and reverse and remand in part.

[42] Affirmed in part, reversed in part, and remanded with instructions.

May, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Melanie K. Reichert
Broyles & Ricafort, P.C.
Indianapolis, Indiana

PRO SE APPELLEE

Matthew V. Mann
Westfield, Indiana